861 F.2d 722
 1988-2 Trade Cases 68,319
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, (88-5118) Plaintiff-Appellee,
v.
DYNAELECTRIC COMPANY, Defendant-Appellant.
UNITED STATES of American, (88-5119) Plaintiff-Appellee,
v.
G.W. Walther EWALT, Defendant-Appellant.
 Nos. 88-5118, 88-5119.
 United States Court of Appeals, Sixth Circuit.
 Nov. 4, 1988.
 
 Before KEITH, RALPH B. GUY, Jr., and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendants appeal their convictions pursuant to a guilty plea, claiming that the indictment under which they were charged was fatally defective because it did not charge an agreement which constitutes bid-rigging in violation of the Sherman Act. Based on our conclusion that the indictment properly sets forth the elements of the offense and that defendants' conduct constituted a violation, we affirm the defendants' convictions.
 
 I.
 
 2
 Beginning sometime in 1980, Big Rivers, a non-profit electric cooperative, undertook the construction of an electrical generating power plant in Ohio County, Kentucky. This plant, designated the D.B. Wilson Station, Unit 1, required extensive electrical work and, in February 1982, Big Rivers invited five electrical contractors, including defendant Dynalectric Company, to submit sealed bids for the electrical work, designated Contract 680. Competitive bidding for Contract 680 was required by the Rural Electrification Administration, United States Department of Agriculture, the guarantor of the federal loan used to finance the construction. All five contractors submitted bids on Contract 680 on or near the due date of April 26, 1982. After receiving and evaluating the bids, Big Rivers' board of directors awarded the contract to the low bidder, Dynalectric, which had submitted a bid for $15.8 million. On April 22, 1982, four days before the bids on Contract 680 were due, representatives of Dynalectric and the other four bidders met at LaGuardia Airport and agreed among themselves that Dynalectric would be the low bidder on Contract 680, and that the other companies would submit bids on the contract which were higher than the bids submitted by Dynalectric.
 
 
 3
 On April 23, 1987, a federal grand jury indicted Dynalectric Company; Dynalectric's president, G.W. Walther Ewalt; and an executive of a competing company, Kenneth Seales, for violating section one of the Sherman Act. 15 U.S.C. Sec. 1. The one-count indictment alleged that between approximately 1982 and 1985, the defendants and others conspired to rig bidding on Contract 680, and that the agreement was an unreasonable restraint of interstate trade and commerce. The indictment alleged that the agreement caused the following effects: (a) the price of the contract "was fixed and established artificially and non-competitively"; (b) the competition for the contract was "restrained and suppressed"; (c) Big Rivers was "denied the right to receive competitive and non-collusive bids"; and (d) Big Rivers was "denied the benefits of free and open competition" for the contract.
 
 
 4
 Prior to the date set for trial, defendants moved to dismiss the indictment on the ground that it failed to allege an offense. The district court denied the motion. Thereafter, defendants Dynalectric and Ewalt entered pleas of guilty. Co-defendant Seales, who is not a party to this appeal, proceeded to trial and was convicted; therefore, our discussion of the defendants throughout the remainder of this opinion will be confined to defendants Dynalectric and Ewalt.[1]
 
 
 5
 On appeal, the defendants claim that the district court erred in finding that the indictment properly charged an offense under the Sherman Act. Defendants argue that the agreement described in the indictment does not constitute bid-rigging violative of the Sherman Act because there is no allegation that the agreement between the competitors either (a) restricted output or raised prices or (b) created the threat of restricting output or raising prices.[2]
 
 II.
 
 6
 Rule 7(c)(1) of the Federal Rules of Criminal Procedure states: "The indictment ... shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." In Hamling v. United States, 418 U.S. 87 (1974), the Supreme Court held that "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Id. at 117 (citations omitted).
 
 
 7
 Defendants were charged with violating section one of the Sherman Act which reads in pertinent part as follows: "Every contract, combination ... or conspiracy, in restraint of trade or commerce ... is declared to be illegal." 15 U.S.C. Sec. 1. Throughout its history, the courts have interpreted this statute to prohibit only agreements which unreasonably restrain trade.
 
 
 8
 Courts have utilized two methods in determining whether restraints of trade unreasonably restrict competition--the per se rule and the rule of reason. In National Society of Professional Engineers v. United States, 435 U.S. 679 (1978), the Court stated:
 
 
 9
 There are, thus, two complimentary categories of antitrust analysis. In the first category are agreements whose nature and necessary effect are so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality--they are "illegal per se." In the second category are agreements whose competitive effect can only be evaluated by analyzing the facts peculiar to the business, the history of the restraint, and the reasons why it was imposed.
 
 
 10
 Id. at 692. Except in those cases where the alleged agreement or activity is "manifestly anticompetitive," there is a general presumption in favor of applying the rule of reason standard. See Continental T.V. v. GTE Sylvania, 433 U.S. 36, 49-50 (1977). In Northern Pacific Railway v. United States, 356 U.S. 1 (1958), the Court described generally the type of case in which application of the per se rule, as opposed to the rule of reason, would be appropriate:
 
 
 11
 However, there are certain agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use. This principle of per se unreasonableness not only makes the type of restraints which are proscribed by the Sherman Act more certain to the benefit of everyone concerned, but it also avoids the necessity for an incredibly complicated and prolonged economic investigation into the entire history of the industry involved, as well as related industries, in an effort to determine at large whether a particular restraint has been unreasonable--an inquiry so often wholly fruitless when undertaken.
 
 
 12
 356 U.S. at 5.
 
 
 13
 As the court reiterated in Broadcast Music, Inc. v. CBS, 441 U.S. 1 (1979), " '[i]t is only after considerable experience with certain business relationships that courts classify them as per se violations....' " Id. at 9 (quoting United States v. Topco Associates, Inc., 405 U.S. 596, 607-608 (1972)). As the district court noted in its order denying the defendants' motion to dismiss, the various courts of appeals which have considered the question have concluded that bid-rigging is both an unreasonable restraint of trade and a per se violation of section one of the Sherman Act. See, e.g., United States v. Sargent Electric Co., 785 F.2d 1123, 1127 (3d Cir.), cert. denied, 479 U.S. 819 (1986); United States v. W.F. Brinkley & Son Construction Co., 783 F.2d 1157, 1159-60 (4th Cir.1986); United States v. Koppers Co., 652 F.2d 290, 293 (2d Cir.), cert. denied, 454 U.S. 1083 (1981).
 
 
 14
 Defendants claim, however, that the district court incorrectly assumes, without actually deciding, that the agreement alleged in the indictment did in fact constitute bid-rigging. In United States v. Ben M. Hogan Co., 809 F.2d 480 (8th Cir.), cert. denied, 108 S.Ct. 84 (1987), the Eighth Circuit recently stated that, "[t]o establish bid-rigging, the government needed to show only that Hogan conspired with one or more of its competitors to manipulate the competitive-bidding process with respect to one or more ... jobs." 809 F.2d at 482. The indictment at issue in this case clearly alleges an agreement among competitors to manipulate the competitive bidding process for Contract 680, and the district court properly characterized the alleged activity as bid-rigging, particularly after noting that "each of the five independent electrical contractors, who would normally be in competition with each other, allegedly entered into a pact to rig their bids for submission to [Big Rivers]." (App. 99-100).
 
 
 15
 Defendants next argue that the district court merely "labelled" the acts set forth in the indictment as bid-rigging, and then improperly concluded that bid-rigging is, ipso facto, a per se violation of the Act. Such an analysis, defendants argue, violates the teachings of Broadcast Music and Jefferson Parish Hospital v. Hyde, 466 U.S. 2 (1984).
 
 
 16
 In Broadcast Music, the Court warned that "easy labels do not always supply ready answers [to the question of whether certain acts are per se violations of the Act]." 441 U.S. at 8. Instead, the Court held, it is necessary to determine whether the agreement is "within or without that category of behavior to which we apply the label 'per se price fixing.' That will often, but not always, be a simple matter." Id. at 9 (footnote omitted).
 
 
 17
 In Jefferson Parish, the Court emphasized in its analysis of the case that a "definitional question" must precede any application of the per se rule:
 
 
 18
 Of course, the Sherman Act does not prohibit "tying"; it prohibits "contract[s] ... in restraint of trade." Thus, in a sense the question whether this case involves "tying" is beside the point. The legality of petitioners' conduct depends on its competitive consequences, not on whether it can be labelled "tying." If the competitive consequences of this arrangement are not those to which the per se rule is addressed, then it should not be condemned irrespective of its label.
 
 
 19
 466 U.S. at 21, n. 34.
 
 
 20
 The indictment in this case alleges an agreement among the bidders on Contract 680 to allow Dynalectric to submit the lowest bid to Big Rivers, while each remaining bidder would submit non-competitive bids. This agreement by its very nature restrained and suppressed competition for Contract 680, Koppers, 652 F.2d at 295, and "clearly deprived [Big Rivers] of the benefits of a competitive bidding process." Brinkley, 783 F.2d at 1160. These competitive consequences are the type to which the per se rule is addressed, and the district court properly concluded that the activities alleged in the indictment amount to a per se violation of the Sherman Act.
 
 
 21
 Defendants argue further, however, that the indictment fails to charge an offense under section one of the Sherman Act because it does not "allege an agreement between competitors that either (a) restricts output or raises prices or (b) creates the threat of restricting output or raising prices."[3] We disagree. In order to be found per se violative of section one of the Sherman Act, bid-rigging must have the competitive consequences to which the per se rule is addressed but does not, of necessity, entail proof of a restriction on output or raising of prices. The indictment at issue in this case alleges that, as a result of the agreement entered into by the defendants, the price of Contract 680 was fixed and established artificially and non-competitively; competition for Contract 680 was restrained and suppressed; Big Rivers was denied the right to receive competitive and non-collusive bids for Contract 680; and Big Rivers was denied the benefits of free and open competition for the contract. These competitive consequences as alleged in the indictment are of the type to which the Sherman Act and the per se rule are addressed. The indictment properly set forth the elements of the offense charged and fairly informed the defendants of the charge against which they were to defend. Hamling. We therefore conclude that the district court properly denied the defendants' motion to dismiss the indictment based on the alleged failure of the indictment to charge an offense, and AFFIRM the defendants' convictions.
 
 
 
 [1]
 Defendant Seales has filed a separate appeal
 
 
 [2]
 Due to the entry of the guilty pleas below, defendants have waived all non-jurisdictional defects to the convictions and are limited to raising jurisdictional questions on appeal. United States v. Norris, 281 U.S. 619 (1930)
 
 
 [3]
 As authority for this argument the defendants cite and seem to rely primarily upon "Criminal Enforcement of the Antitrust Laws: Targeting Naked Cartel Restraints," Charles F. Rule, Assistant Attorney General, Antitrust Division, 36th Annual Antitrust Spring Meeting, American Bar Association (March 24, 1988), wherein Mr. Rule states: "In general, the conduct that we have prosecuted criminally can be described by four inter-related criteria: ... (2) the agreements have as their inherently likely effect the raising of price and restricting of output...."